Timothy M. Bechtold
BECHTOLD LAW FIRM, PLLC
P.O. Box 7051
Missoula, MT 59807
406-721-1435
tim@bechtoldlaw.net

Attorney for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

MISSOULA DIVISION

| | |
|---|---|
| NATIVE ECOSYSTEMS COUNCIL, and ALLIANCE FOR THE WILD ROCKIES,<br><br>Plaintiffs,<br><br>vs.<br><br>TOM TIDWELL, Northern Region Regional Forester, and UNITED STATES FOREST SERVICE, an agency of the U.S. Department of Agriculture,<br><br>Defendants. | No: CV 08-173 -M-DWM<br><br>**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF** |

## I.  INTRODUCTION

1. This is a civil action for judicial review under the Administrative Procedure Act of the US Forest Service's decision (Decision Memo, February 21, 2008) approving the Barton Springs Thinning Project (Project) on the Beaverhead-Deerlodge National Forest.  Plaintiffs Native Ecosystems Council (NEC) and Alliance for the Wild Rockies (AWR) attest that the final

decision of the Forest Service approving the Project is arbitrary and capricious, an abuse of discretion, and/or otherwise not in accordance with law.

2. On February 2, 2008, the Forest Service issued a Decision Memo (DM) approving the Barton Springs thinning project to cut trees on 163 acres of public land.

3. The agency has failed to consider comprehensively the impacts of the Project on sensitive species and species of special concern that would be impacted by the Project, including Flammulated Owl and Great Grey Owl, as well as snag habitat generally.

4. Defendants' approval of the Project as written is a violation of the National Environmental Policy Act (NEPA), 42 U.S.C. 4331 *et seq.*; the National Forest Management Act (NFMA) 16 U.S.C. § 1600 *et seq.* and the Administrative Procedure Act (APA), 5 U.S.C. §§ 701 *et seq.* Plaintiffs seek declaratory and injunctive relief to ensure that the agency comply with NEPA's substantive mandate to consider environmental impacts; to mitigate harm and prevent irreparable injury to the human environment; and to protect plaintiffs' interests at law. Plaintiffs request that approval of this project under a categorical exclusion be set aside pursuant to 5 U.S.C. § 706(2)(A); and that the Court enjoin the Beaverhead-Deerlodge National Forest from initiating this Project until Defendants comply fully with NEPA, NFMA and the APA.

5. Plaintiffs seek a declaratory judgment, injunctive relief and the award of costs of suit, including attorney and expert witness fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412, and such other relief as this Court deems just and proper.

6. In light of the manifest violations of NEPA and NFMA with regard to the cumulative impact of this project on sensitive species, including the flammulated owl, Plaintiffs request that the Decision Memo utilizing a categorical exclusion be set aside. Plaintiffs request that the

Forest Service be enjoined from promulgating the Project as a categorical exclusion and be required to comply with the substantive and procedural mandates of NEPA.

## II.     JURISDICTION

7.     This action arises under the laws of the United States and involves the United States as a defendant.  Therefore, this Court has subject matter jurisdiction over the claims specified in this Complaint pursuant to 28 U.S.C. §§ 1331, 1346.

8.     An actual controversy exists between Plaintiffs and Defendants.  Plaintiffs use and enjoy the Beaverhead-Deerlodge National Forest, including the Pintler Ranger District, for hiking, fishing, hunting, camping, photographing scenery and wildlife, and engaging in other vocational, scientific, spiritual, and recreational activities.  Plaintiffs' members intend to continue to use and enjoy the area frequently and on an ongoing basis in the future.

9.     The aesthetic, recreational, scientific, spiritual, and educational interests of Plaintiffs have been and will be adversely affected and irreparably injured if defendants fully implement the Project.  These are actual, concrete injuries caused by defendants' failure to comply with nondiscretionary duties under NFMA and NEPA.  The requested relief would redress these injuries and this Court has the authority to grant plaintiffs' requested relief under 28 U.S.C. §§ 2201 & 2202, and 5 U.S.C. §§ 705 & 706.

10.     Plaintiffs and their members submitted extensive written comments concerning the project, have fully participated in the administrative review process, and have exhausted administrative remedies.  Defendants have declared that the Decision Memo for the Project is the final administrative action of the Department of Agriculture and the challenged Agency actions are final and subject to this court's review under the APA, 5 U.S.C. §§ 702, 704, and 706.

## II. VENUE

11. Venue in this case is proper under 28 U.S.C. § 1391(e) and Local Rule 3.3(a)(1). Defendant Tidwell, an officer of the Forest Service with offices in Missoula, MT, resides within the Missoula Division of the United States District Court for the District of Montana, and is the principal representative in this District of the Defendant United States Forest Service. The issues raised by Plaintiffs are regional issues that need to be addressed at the regional level, as it is the responsibility of the Regional Forester to protect species whose range encompasses more than one national forest. Thus, Plaintiffs' primary dispute is with the Regional Forester. The challenged decisions were upheld by the Regional Forester, and are representative of official policies and procedures common to the Northern Region.

## III. THE PARTIES

12. Plaintiff Native Ecosystems Council is a non-profit Montana corporation with its principal place of business in Three Forks, Montana. Native Ecosystems Council is dedicated to the conservation of natural resources on public lands in the Northern Rockies. Its members use and will continue to use the Beaverhead-Deerlodge National Forest for work and outdoor recreation of all kinds, including fishing, hunting, hiking, horseback riding, and cross-country skiing. The Forest Service's unlawful actions adversely affect Native Ecosystems Council's organizational interests, as well as its members' use and enjoyment of the Beaverhead-Deerlodge National Forest, including the Project area. Native Ecosystems Council brings this action on its own behalf and on behalf of its adversely affected members.

13. Plaintiff Alliance for the Wild Rockies is a tax-exempt, non-profit public interest organization dedicated to the protection and preservation of the native biodiversity of the Northern Rockies Bioregion, its native plant, fish, and animal life, and its naturally functioning

ecosystems. Its registered office is located in Helena, Montana. AWR has more than 2,000 individual members, many of whom reside in Montana, and more than 600 member businesses and organizations, many of which are located in Montana. Members of AWR work as fishing guides, outfitters, and researchers who observe, enjoy and appreciate Montana's native wildlife and the water quality of aquatic ecosystems in Montana's lakes and streams, as well as the habitat quality of terrestrial ecosystems upon which they depend, and expect to continue to do so in the future, including in the Project area. Members' professional and recreational activities are directly affected by Defendants' failure to perform their lawful duty to protect and conserve these ecosystems.

14. Defendant Tom Tidwell is the Regional Forester for the Northern Region of the U.S. Forest Service, and in that capacity has ultimate responsibility for insuring that decisions made at the National Forest level in the Northern Region are consistent with applicable laws, regulations, and official policies and procedures.

15. Defendant United States Forest Service is an agency within the federal Department of Agriculture, entrusted with the management of our National Forests.

### IV. PROCEDURAL BACKGROUND

16. On February 21, 2008, the Pintler District Ranger signed a Decision Memo approving the Barton Springs Thinning Project on the Pintler Ranger District of the Beaverhead-Deerlodge National Forest.

17. Plaintiffs filed an appeal of the DM on April 7, 2008, requesting a remand of the Project. Plaintiffs' appeal was denied on May 27, 2008. Plaintiffs have exhausted all administrative remedies.

## V.   FACTUAL ALLEGATIONS

### A.   Project Details

18. The Project area is located within the Barton Springs Watershed on the Pintler Ranger District in the Clark Fork-Flints landscape of the Beaverhead Deerlodge National Forest, approximately 18 miles northwest of Phillipsburg, Montana.

19. The Project is within timber compartments 346 and 347, which comprise 22,690 acres in Township 10N, Range 15W, Sections 25, 26 and 36.

20. The project authorized logging of 163 acres of healthy trees up to fourteen inches dbh, and all size classes of dead or infected trees.

21. Forest wide, approximately 235,500 acres has experienced harvest activity previously, including approximately 63,000 acres of low elevation ponderosa pine forest, which accounts for virtually all of this forest type on the Beaverhead-Deerlodge National Forest.

22. 337 acres surrounding Barton Springs treatment unit were logged in 1958, and consequently, the paucity of snags that characterizes the Clark Fork-Flints Landscape is likely to be exacerbated in the immediate area of the Project.

23. Old growth Douglas fir forest in this landscape represents only half of its abundance Forest-wide.

24. Management activity, including understory thinning and ecosystem burning, has impacted an additional 2670 acres of flammulated owl habitat in the analysis area, and no analysis of large snag availability was done post-treatment to determine the impact of treatment on habitat.

25. Private timber production lands adjacent to the Project site have experienced multiple harvests, including commercial clearcut and thinning treatments.

### B.  Categorical Exclusion from NEPA Analysis

26. The Agency approved the project under Categorical Exclusion 31.2(14) of the Forest Service Handbook, allowing "commercial and non-commercial felling and removal of any trees necessary to control the spread of insects and disease on no more than 250 acres with no more than one half mile of temporary road construction."

27. A project may not be categorically excluded if the presence of extraordinary circumstances renders the impact of the project significant.  The presence of, and likely harm to, a Forest Service identified "sensitive" species is considered an extraordinary circumstance.

28. The Forest Service did not analyze the cumulative impacts of past harvest on snag abundance, and the consequent impacts on sensitive species such as the flammulated owl.

29. The Forest Service has identified flammulated owls as "present" in the project area and indicated that they will be impacted by the proposed treatment.

30. Notwithstanding this determination of likely impact to the flammulated owl from the project, the Forest Service Promulgated the project as a categorical exclusion, allowing the Agency to circumvent NEPA analysis on the premise that there will be no significant impact to the environment.

### C.  Flammulated Owl

31. The flammulated owl is identified as a "sensitive species" on the Beaverhead-Deerlodge National Forest, meaning that it is a species "for which population viability is of concern, as evidenced by significant current or predicted downward trends…."  The Forest Service claims in the Wildlife Report prepared for the Project that flammulated owl habitat remaining on Forest Service lands is "adequate."

32. The Forest Service regional assessment identifies a severe limitation of flammulated owl habitat on the Beaverhead-Deerlodge National Forest.

33. Flammulated owl habitat is severely limited across the Beaverhead-Deerlodge National Forest and in addition to its sensitive species designation, it is identified as a Montana "Species of Special Concern" due to limited breeding habitat.

34. Notwithstanding the determination that an impact on the species was considered likely, no formal surveys were done in the treatment unit to locate nest sites that are known to exist in the Project area.

35. In evaluating flammulated owl habitat in the Project area, the Forest Service concluded that the Project Analysis Area contains between 14,535 and 28,387 acres of flammulated owl habitat, an estimate that conflicts with the Forest Service Region I Habitat Inventory, which indicates that only 4,878 acres of suitable habitat remain in the Beaverhead-Deerlodge Forest, an estimate three to seven times lower than that generated for purposes of Project analysis.

36. Past timber harvest activity on the BDNF has impacted virtually all of the low elevation ponderosa pine forest habitat, more than 63,000 acres.

37. Douglas fir old growth habitat, which supplies the large snags necessary for flammulated owl nest sites comprises only 10% of the forest types in the Clark Fork-Flints Landscape (CFFL), well below the 20% required by the Forest Plan.

38. The average number of large snags (greater than 20 inches dbh) across the BDNF is .4 per acre, while the average across the CFFL is zero per acre. Flammulated owls generally use snags of 20 inches dbh or larger.

39. The Forest Service has identified natural (pre-harvest) densities for large snags in this forest type on the BDNF as between one and four snags per acre.

40. Medium sized snag habitat (from 10 to 19.9 inches dbh) averages 6.7 snags per acre across the BDNF, but only 4.3 per acre within the CCFL. For Project purposes, the Forest Service Reported an average density in the CCFL for medium sized snags of between 6.28 and 11.2 snags per acre, a significantly higher number than was provided by the most current forest inventory.

41. Private timber production lands adjacent to the project area have undergone intensive harvest treatment, including clearcutting and thinning.

42. The Decision Memo states that existing snag density will be maintained in the Project area at a level consistent with the Northern Region Snag Protocol.

43. No snag surveys have been completed in the treatment units, and as noted above, the most current Forest Service inventory identifies a shortage of large and medium sized snags across the CCFL.

44. Mitigation measures for the Project include the retention of only a few patches of large snags and do not anticipate the retention of all large snags.

45. Based on the Project plan and mitigation measures, over half of the large snags currently existing in the project area could be lost during harvest. Future snag recruitment will be impacted, as mitigation measures only include leaving "soft" snags, and plan to harvest all "hard" snags.

46. Soft snags have limited value to wildlife, including the flammulated owl, because woodpecker species primarily use hard snags, and their holes are used by the flammulated owl.

47. The proposed treatment, combined with prior logging of adjacent lands, will result in a 500 acre area that is essentially devoid of flammulated owl nesting habitat.

48. The decrease in canopy cover that will result from the treatment is unsuitable for flammulated owl habitat.

### D. Great Gray Owl

49. The great gray owl has been identified as a Montana species of special concern because of limited and/or declining numbers, range, and/or habitat.

50. The great gray owl is thought by the Forest Service to exist in the Project landscape, but no great gray owl surveys were completed for the 163 acre treatment unit.

51. Under the proposed Project plan, logging could occur during the spring nesting season of the great gray owl, and could contribute to nest failure if nests exist in or near the treatment unit.

52. The project will eliminate the large snags that are the preferred nesting habitat for the great gray owl, as well as the amount of canopy cover and stand decadence required by the great gray owl for nesting habitat.

53. Douglas fir old growth forests and large snag habitat in the Project landscape are already limited, especially in the 337 acres of forest immediately surrounding the proposed treatment unit.

54. Project impacts on the great gray owl were assessed using goshawk foraging habitat rather than great gray owl nesting habitat, and critical aspects of the latter habitat were not addressed in the assessment of impacts.

55. The direct and cumulative loss of habitat for the great gray owl was not analyzed in the project impact analysis phase.

56. The Forest Service has violated the mandates of its own forest plan, and hence NFMA, by failing to accurately identify and protect habitat essential for the Flammulated Owl, a species of special concern.

# CLAIMS FOR RELEIF

## FIRST CLAIM FOR RELIEF

<u>The Forest Service violated NEPA by categorically excluding the Project from review.</u>

57. Plaintiffs re-allege each preceding paragraph as though stated in full herein.

58. Cumulative impacts may result from "individually minor but collectively significant actions taking place over a period of time." 40 C.F.R. § 1508.7.

59. A categorical exclusion is appropriate only when an action does not significantly impact the human environment, either in isolation or cumulatively with past, present, or reasonably foreseeable future actions. A proposed action may be categorically excluded only if there are no extraordinary circumstances related to the proposed action. Extraordinary circumstances include the presence of a Forest Service sensitive species – here the flammulated owl. The presence of this species is accompanied by a cause effect relationship between the proposed Project and a likely impact to one or more members of the species. Moreover, the flammulated owl's population viability on the Beaverhead-Deerlodge Forest is already a concern. Combined with past timber harvest and the cumulative impact of the Project on snag habitat, extraordinary circumstances exist which preclude the use of a categorical exclusion. The Forest Service must either complete an EA for the project or conduct further monitoring and implement more stringent mitigation measures to protect the flammulated owl and its associated habitat.

60. Further, the assessment of Project Impacts on the flammulated owl does not address snag density or size following treatment, and thus cannot be considered an accurate predictor of post treatment viability.

61. The harvest activity itself poses the risk of mortality to newly fledged flammulated owls, as the Forest Service failed to monitor the area to locate existing nest sites.

62.     In addition to the impacts on flammulated owl, the Project will contribute to the cumulative impacts of past losses of large snag habitat and dense forest cover on both the Forest and adjacent private lands.

## SECOND CLAIM FOR RELIEF

<u>The Project violates NFMA and NEPA because the Forest Service is not ensuring, and did not take a hard look at the impacts of the project on the viability of Forest Service identified sensitive species.</u>

63.     Plaintiffs re-allege each preceding paragraph as though stated in full herein.

64.     Available Forest Service habitat data indicates that the flammulated owl population is limited in distribution and available habitat, and hence in total population.  Notwithstanding its own data, the Forest Service has approved a Project that will further reduce large snag habitat, and cumulatively contribute to a significant impact on the flammulated owl.  Approval of the project constitutes a failure to ensure the viability of a Forest Service sensitive species and thus is a direct violation of NFMA's mandate to ensure the viability of sensitive species.

65.     The Beaverhead-Deerlodge Forest plan implements NFMA by requiring the Agency to manage sensitive species habitat by protecting occupied reproductive habitat and maintaining habitat at current potential.  The Decision violates the Forest Plan because key flammulated owl habitat, including large snag habitat, will be reduced as a result of the Project, further exacerbating a cumulative habitat shortage for this species across the entire Forest.  The mitigation measures proposed are insufficient to maintain nesting habitat as required by the Forest Plan, and hence NFMA.

66.     By failing to heed its own data, the Forest Service failed to take a hard look at the impacts of the Project, combined with the impacts of past harvest activity, on the Viability of a sensitive species.

### THIRD CLAIM FOR RELIEF

<u>The Project violates NEPA and NFMA by not ensuring, to the extent practical, the viability of a State Species of Special Concern, the Great Gray Owl.</u>

67. Plaintiffs re-allege each preceding paragraph as though stated in full herein.

68. The Forest Service has violated the Beaverhead-Deerlodge Forest Plan by not identifying and protecting, to the extent practicable, habitat essential for wildlife listed by the State of Montana as a "Species of Special Concern". The Forest Service failed to take the most rudimentary measures to ensure the viability of this species. No surveys were conducted in the treatment area, despite the fact that the owl's presence is considered to be likely. The timing of the Project will disturb any nesting owls that occur in or near the treatment area. Thus the Forest Service has violated the Forest Plan and hence NFMA.

69. In addition, the failure of the Agency to take a hard look at the impacts of the Project on the great gray owl violates NEPA. Impacts were assessed based on goshawk foraging habitat rather than on great gray owl nesting habitat, providing an inaccurate picture of habitat abundance.

### FOURTH CLAIM FOR RELIEF

<u>The Project approval violates the Administrative Procedure Act, NFMA, and NEPA because it is arbitrary and capricious, an abuse of discretion, and or not in accordance with law.</u>

70. Plaintiffs re-allege each preceding paragraph as though stated in full herein.

71. In evaluating the cumulative effects of past timber harvest and current habitat levels for the flammulated owl, the Forest Service raised conclusions in support of its proposed action that are directly contrary to its own data. The Agency's Project generated estimates of flammulated owl habitat abundance are three to seven times higher than its own habitat inventory. Without an

adequate explanation of this discrepancy, the Agency's adherence to the exponentially higher habitat estimate produced for Project analysis is arbitrary and capricious.

72.     More specifically, the Forest Service's numeric estimates of the large snags preferred by flammulated owls shows a similar conflict with the Agency's own data.  The most current Forest Inventory completed by the Agency produced large snag estimates thirty to fifty percent lower than those produced by the Agency for purposes of the Project.

## REQUEST FOR RELEIF

A.   Declare that the Agency has abused its discretion under the National Forest Management Act in declaring the Project a categorical exclusion, specifically by finding that there are no extraordinary circumstances related to the implementation of the Project that may result in a significant impact on the human environment, and that such a finding is arbitrary, capricious, and a violation of NFMA.

B.   Declare that the Agency has failed to adequately consider the cumulative impacts of the Project as is required by the National Environmental Policy Act, and that it must, by law, complete an Environmental Assessment prior to implementation of the project, and enjoin implementation of the Project until compliance with NEPA is achieved.

C.   Declare that Defendants' decision to approve and proceed with the Project without adequate assurance that the Project will ensure the diversity and viability of sensitive species is arbitrary, capricious, an abuse of discretion, and in violation of NFMA.

D. Declare that Defendants' decision to approve and proceed with the project without adequately considering the impacts on Montana species of special concern to the extent practicable is a violation of NEPA and NFMA.

E. Declare Defendants' decision to approve and proceed with the Project without adequate assurance that the Project will maintain snag levels consistent with the Northern Region Snag Protocol and the Forest Plan is arbitrary and capricious, and enjoin the Project until an adequate snag inventory is obtained for the Project area.

DATED this 9th day of December, 2008

/s/ Timothy M. Bechtold
Timothy M. Bechtold
BECHTOLD LAW FIRM, PLLC

Attorney for Plaintiffs